1

2

3

4

5              UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
6                       AT SEATTLE

7
    BLACKSTONE INTERNATIONAL,
8   LTD.,

9                   Plaintiff,

10       v.                                    C20-1686 TSZ

11  E2 LIMITED; COLLIN                         ORDER
    CARPENTER; BIG BOX SALES &
12  MARKETING INC.; and
    TECHNOMATE MANUFACTORY,
13  LTD.,

14                  Defendants.

15       THIS MATTER comes before the Court on the motions to (i) dismiss Plaintiff's

16  First Amended Complaint ("FAC"), docket no. 19-61, for lack of personal jurisdiction, or

17  in the alternative, to compel arbitration, docket no. 24, filed by Defendant E2 Limited

18  ("E2"); (ii) dismiss the FAC for lack of personal jurisdiction, docket no. 21, filed by

19  Defendant Technomate Manufactory ("Technomate") and; (iii) dismiss the FAC for

20  failure to state a claim, docket no. 22, filed by Defendant Collin Carpenter, which E2 and

21

22

23

Technomate join, docket no. 29.[1] Having reviewed all papers filed in support of, and in opposition to, the motions,[2] the Court enters the following Order.

**Background**

**A.**   **Factual Allegations**

During the last 15 years, Plaintiff Blackstone International, Ltd. ("Blackstone"), a Maryland entity, has sold over three-and-a half-million product units of "lighting products, mirrors, electronics, gaming products, and fans to Costco, a Washington corporation," which has "accounted for over $200 million in revenue to Blackstone." FAC at ¶ 29. Based on the "phenomenal commercial success" of Blackstone's products, for the 2019 season "Costco agreed to pay Blackstone more than $70 million" for the purchase of more than three million units of Blackstone's "Cascade" branded fans. *Id.* at ¶¶ 34, 35. Blackstone alleges that E2, a Hong Kong entity, and Technomate, also a Hong Kong entity (together, the "Corporate Defendants"), through Carpenter, a Washington resident, (collectively, the "Defendants") "covertly communicated with Costco and made "false and defamatory statements" to Costco about debts that Blackstone owed to a third-party entity, Mikia Lighting Corp. ("Mikia"). *Id.* at ¶¶ at 47, 50, 52. Defendants allegedly sought to use these statements to "obtain an unfair competitive advantage over

---

[1] Defendants E2 and Carpenter also move to seal certain documents filed temporarily under seal by Plaintiff Blackstone. *See* Defs. Mot. to Seal (docket no. 62). Defendants have shown good cause to do so, and the Court GRANTS their motion.

[2] Defendant Big Box Sales & Marketing does not move to dismiss on any theory.

Blackstone . . . " and to "interfere with" Blackstone's "contracts and relationships" with Costco. *Id.* at ¶¶ 47, 52.

On November 2, 2018, Eric Mar, a general manager at Technomate, sent Carpenter an email asking him to help "bypass Blackstone and sell [the] tower fan to Costco through . . . [Technomate's] agent which is you." Ex. A6 to Huck Decl. (docket no. 52-1 at 75).[3] Carpenter responded that he wanted to meet with Costco. *Id.* (docket no. 52-1 at 74). In that email, Carpenter also told Mar about his pitch to Costco, which included telling Costco about the "termination in business relationship between Blackstone and Mikia." *Id.*

On November 18, 2018, Carpenter met with Costco. Carpenter sent an email to Costco representatives which stated, in relevant part, that "I [Carpenter] am at Costco now in room 1159 for 4 PM meeting and will be here tomorrow, 11/20/18 for most of the day also." Ex. A11 to Huck Decl. (docket no. 52-1 at 86). The Costco representatives

---

[3] Defendants raise several evidentiary objections to the Huck Declaration's admissibility. *See* E2 Repl. Br. at 6 (docket no. 68 at 8 fn. 1). The Court has reviewed these objections. The Court is not persuaded that it must determine the ultimate admissibility of the evidence because the admissibility of personal jurisdiction evidence is not clearly relevant at the motion to dismiss stage. *See, e.g.*, *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 561 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 2860 (2015) (refusing in the context of Federal Rule of Civil Procedure 12(b)(2) motion to "address any questions regarding the ultimate admissibility of evidence"); *Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 19-CV-2648, 2021 WL 83736, at *3 (N.D. Ill. Jan. 11, 2021) (same); *Citadel Inv. Grp., L.L.C. v. Citadel Cap. Co.*, 699 F. Supp. 2d 303, 308 (D.D.C. 2010) (stating that a plaintiff is not limited to evidence meeting standards of admissibility required for summary judgment motions to establish prima facie case of personal jurisdiction). Instead, all that is needed at this stage is a prima facie showing that the Defendants are subject to personal jurisdiction in this District.

with which Carpenter met worked in Issaquah, Washington. *See id.* at Ex. A16 (docket no. 52-1 at 111.)

As a result of that meeting, Costco began purchasing fans from Defendants. Ex. A8 to Huck Decl. (docket no. 52-1 at 81). Costco contacted Carpenter directly to order these fans, and Carpenter responded with E2 and Technomate members cc'd on his emails. *Id.* at Ex. A20 (docket no. 52-1 at 132). Defendants provided price quotes for their fans under E2's name and shipped them with E2's name on the label. *Id.* at Ex. A21 (docket no. 52-1 at 141). Thus, Blackstone alleges that, because of Defendants' actions, Costco ended its 15-year relationship with Blackstone and began receiving fans from Defendants instead. FAC at ¶ 54.

Defendants did not only want Costco's business that year, however. Defendants wanted a continuing relationship. As such, Defendants sought to sell Costco on their new 2020 Sierra Tower Fans. On March 4, 2019, Carpenter contacted Mar—with E2 representatives cc'd—and urged him to come from Hong Kong to Seattle to bring Costco "a working sample" of Defendants' new 2020 Sierra Tower Fans. Ex. A19 to Huck Decl. (docket no. 52-1 at 119). Defendants began selling Costco the Sierra Tower Fans in 2020.

Blackstone alleges that Defendants' 2020 Sierra Tower Fans "captured the distinct, nonfunctional features" of the "Blackstone Tower Fan." *See* FAC at ¶¶ 59–61. Blackstone alleges this "capture" has created "both the likelihood of confusion and actual confusion in the marketplace." *Id.* at ¶ 60. In addition, the Defendants' Sierra Tower Fan product manuals also allegedly were "the same or substantially similar to" the "text and

1   images" in Blackstone's product manuals. *Id.* at ¶¶ 59, 62. The "text and images" in

2   Blackstone's manuals are protected by registered U.S. copyrights. *Id.* at ¶ 62.

3         Blackstone brings nine causes of action against all Defendants for: (i) defamation;

4   (ii) violating the Washington Consumer Protection Act, RCW § 19.86, *et. seq.* (the

5   "WCPA"); (iii) unfair competition; (iv) tortious interference; (v) violating of the Lanham

6   Act, 15 U.S.C. § 1125(a); (vi) violating the Washington Uniform Trade Secrets Act,

7   RCW 19.108.010 (the "WUTSA"); (vii) violating the Defend Trade Secrets Act,

8   18 U.S.C. § 1836 (the "DTSA"); (viii) copyright infringement; and (ix) unjust

9   enrichment.

10  **B.    <u>Procedural History</u>**

11        Blackstone first sued in the District of Maryland, but the Maryland court

12  dismissed the case for lack of personal jurisdiction. Ex. 3 to Ludwig Decl. (docket

13  no. 25). There, the court found that E2 did not maintain offices or employees in Maryland

14  or anywhere else in the United States. *Id.* at 9. The court also found that E2 does "not

15  export or import products directly into the United States; rather, E2 delivers the [fans] to

16  Costco in Ningbo, China, where Costco takes ownership of the [fans] and exports [the

17  products] worldwide." *Id.* The court held that the only contacts that E2 had with the

18  forum were selling and shipping the [fans] to Costco with the knowledge that the [fans]

19  would be sold by Costco to customers in the United States, including Maryland." *Id.* at

20  17. Those contacts were not enough to confer jurisdiction in Maryland, and the court

21

22

23

1   dismissed the case.[4]

2          On February 9, 2020, after the District of Maryland dismissed the case, Blackstone

3   filed this case in King County Superior Court. *See* Ex. 1 to Verification of State Court

4   Records (docket no. 19). Without naming any defendants, Blackstone sought third-party

5   discovery from Costco and Carpenter through the issuance of subpoenas. *Id.*, Exs. 5, 10,

6   11. After Costco and Carpenter supplied Plaintiff with voluminous responsive documents

7   and records, Blackstone filed its First Amended Complaint on November 10, 2020,

8   naming E2, Technomate, Carpenter, and the long-defunct Big Box Sales & Marketing as

9   defendants. *See* FAC; Ludwig Decl. at ¶¶ 9–10. Defendants removed the case to this

10  Court on November 16, 2020. *See* Notice of Removal (docket no. 1).

11         Defendants E2 and Technomate bring motions under Rule 12(b)(2) to dismiss for

12  lack of personal jurisdiction. E2 also brings a motion to compel arbitration if the Court

13  holds that it has personal jurisdiction over the parties. In response, Blackstone argues that

14  this Court has jurisdiction under the traditional test. If the Court rules that it does not

15  have jurisdiction under traditional means, then Blackstone argues that no court in the

16  United States has jurisdiction. If that is so, Blackstone argues that this Court has

17  jurisdiction under Rule 4(k)(2).   Defendant Carpenter brings a motion under

18  Rule 12(b)(6) to dismiss on all counts, which Defendants E2 and Technomate join.

19

20  ──────────────────

21  [4] The Maryland court concluded that personal jurisdiction was not proper in Maryland. Here, Carpenter's
    contacts with Washington on the Corporate Defendants' behalf result in a different conclusion as to
22  specific jurisdiction in Washington. These facts were not before the Maryland court and were discovered
    by the Plaintiff later.

23

ORDER - 6

1  **Discussion**

2  **A.**     **Personal Jurisdiction**

3      Personal jurisdiction refers to a court's power to render a valid and enforceable

4  judgment against a particular defendant. *See World-Wide Volkswagen Corp. v. Woodson*,

5  444 U.S. 286, 291 (1980); *Pennoyer v. Neff*, 95 U.S. 714, 720 (1877), *overruled in part*

6  *by Shaffer v. Heitner*, 433 U.S. 186, 206 (1977). The contours of that power are shaped,

7  in large part, by the Due Process Clause of the Fourteenth Amendment, which requires

8  sufficient "contacts, ties, or relations" between the defendant and the forum state before

9  "mak[ing] binding a judgment in personam against an individual or corporate defendant."

10 *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). Due Process requires

11 "'minimum contacts' between the defendant and the forum" to protect the defendant

12 "against the burdens of litigating in a distant or inconvenient" court and lend "a degree of

13 predictability to the legal system." *World-Wide Volkswagen*, 444 U.S. at 291, 292, 297.

14     Blackstone asserts specific jurisdiction. "The inquiry whether a forum State may

15 assert specific jurisdiction over a nonresident defendant 'focuses on the relationship

16 among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem*

17 *Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277,

18 287 (2014)).

19          As to specific jurisdiction, [the Ninth Circuit] generally conduct[s] a three-
           part inquiry—commonly referred to as the minimum contacts test—to
20         determine whether a defendant has sufficient contacts with the forum to
           warrant the court's exercise of jurisdiction:

21
              (1) The non-resident defendant must purposefully direct his activities or
22         consummate some transaction with the forum or resident thereof; or perform

23

1    some act by which he purposefully avails himself of the privilege of
2    conducting activities in the forum, thereby invoking the benefits and
     protections of its laws;

3        (2) the claim must be one which arises out of or relates to the defendant's
         forum-related activities; and
4
         (3) the exercise of jurisdiction must comport with fair play and substantial
5        justice, i.e. it must be reasonable.

6    *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018)

7    (internal quotation marks omitted). The plaintiff bears the burden of satisfying the first

8    two prongs. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir.

9    2011). If a plaintiff does that, then the burden of satisfying the third prong shifts to the

10   defendant to present a "compelling case" that the exercise of jurisdiction would not be

11   reasonable. *Id.* "Generally, '[t]he commission of an intentional tort in a state is a

12   purposeful act that will satisfy the first two requirements [of the minimum contacts

13   test].'" *Freestream Aircraft*, 905 F.3d at 603 (alterations in original) (quoting *Paccar*

14   *Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)).

15       When the Court decides a Rule 12(b)(2) motion without an evidentiary hearing,

16   "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand

17   the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would

18   support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.

19   1995) (internal citations omitted). In so doing, the Court may consider evidence outside

20   the complaint, such as affidavits, declarations, and other submitted materials. *See*

21   *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004). When the

22   parties' respective affidavits and/or declarations conflict, the Court must resolve all

23

ORDER - 8

1  disputed facts in the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154

2  (9th Cir. 2006).

3      The parties disagree about whether this Court has personal jurisdiction over the

4  Corporate Defendants. Blackstone argues that this Court has jurisdiction because

5  Carpenter, acting as the Corporate Defendants' agent, committed intentional torts in this

6  District. The Corporate Defendants argue that this Court does not have specific

7  jurisdiction over them because (i) an agent's actions inside of a forum cannot confer

8  specific personal jurisdiction over the principal, or (ii) if an agent's actions can confer

9  jurisdiction over the principal, then Carpenter was not the Corporate Defendants' agent.

10      **1.    The Agency Theory of Specific Personal Jurisdiction**

11      Blackstone argues that it can establish jurisdiction under an agency theory. Pl.

12  Resp. Br. at 16 (docket no. 49 at 27). The Corporate Defendants argue that the agency

13  theory no longer provides a viable basis for jurisdiction. E2 and Technomate Repl. Br. at

14  6 (docket no. 68 at 8).

15      Before the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S.Ct. 746

16  (2014), the Ninth Circuit allowed a plaintiff to impute a local entity's contacts with the

17  forum state to a foreign affiliate or parent under an agency theory. *Ranza v. Nike, Inc.*,

18  793 F.3d 1059, 1071 (9th Cir. 2015). In *Daimler*, the Supreme Court specifically rejected

19  the agency theory's applicability to general jurisdiction. *See id.* (citing *Daimler*, 134

20  S. Ct. at 759). But *Daimler* specifically recognized that "[a]gency relationships . . . may

21  be relevant to the existence of specific jurisdiction. A corporation can purposefully avail

22  itself of a forum by directing its agents or distributors to take action there." *Daimler*, 134

23

S. Ct. at 759 n.13 (emphasis added) (internal quotations omitted). Likewise, although *Ranza* recognized *Daimler*'s holding, *Ranza* only applied it to general jurisdiction. 793 F.3d at 1071.

Furthermore, the concerns animating *Daimler* are not present in the specific jurisdiction context. In *Daimler*, the Court rejected the Ninth Circuit's agency theory because of the concern that it would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate[.]" 134 S. Ct. at 760–61. Unlike the overly broad theory that *Daimler* rejected, specific jurisdiction requires that the defendant's agent's contacts relate to the claim at issue; in other words, the defendant will only be subject to specific jurisdiction if the plaintiff's claim arises out of its agent's contacts. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) ("[D]efendant may indicate an intent or purpose to serve the market in the forum state . . . [by] marketing the product through a distributor who has agreed to serve as the sales agent in the forum State."); *HaloSongs, Inc. v. Sheeran*, No. 16-CV-1062, 2017 WL 5198248, at *9 (C.D. Cal. Jan. 13, 2017) (holding that the agency theory of specific jurisdiction survives after *Ranza*); *Herring Networks, Inc. v. AT&T Servs., Inc.*, No. 16-CV-01636, 2016 WL 4055636, at *7–8 (C.D. Cal. July 25, 2016) (analyzing whether plaintiff's claims "arise out of or relate to" the contacts of defendant's agents); *Weaver v. Johnson & Johnson, Ethicon, Inc.*, No. 16-CV-00257, 2016 WL 1668749, at *5 (S.D. Cal. Apr. 27, 2016) ("A parent corporation may be amenable to specific jurisdiction in a forum state, through an agency relationship . . .") (citing *Daimler*, 134

S. Ct. at 759 n.13; and *Ranza*, 793 F.3d at 1075).[5] In sum, the Court holds that agency can still provide a basis for specific jurisdiction.

### 2.    Carpenter as the Corporate Defendants' Agent

Given the Ninth Circuit's guidance in *Freestream Aircraft*, the threshold question is whether part of the alleged tortious conduct occurred in Washington.[6] If so, the *Paccar* purposeful availment analysis is appropriate. *See Freestream Aircraft*, 905 F.3d at 606. Blackstone's theory in that regard is that Carpenter acted as the Corporate Defendants' agent. If Carpenter indeed acted as the Corporate Defendants' agent, then Blackstone has alleged facts sufficient to support specific jurisdiction over the Corporate Defendants.[7]

The Court has little difficulty concluding that Plaintiff's allegations about the Defendants' conduct establish a prima facie case that Carpenter acted as the Corporate Defendants' agent in Washington. Blackstone alleges that Carpenter held meetings in

---

[5] The Corporate Defendants contend that the agency theory is no longer viable for specific jurisdiction. E2 and Technomate Repl. Br. at 7 (docket no. 68 at 7). They argue that *Walden v. Fiore*, 134 S. Ct. 115 (2014) expanded *Daimler*'s holding. *Id.* at 11, 13 (docket no. 68 at 13, 15). They rely on the opinion's requirement that the relationship between the defendant, plaintiff, and the forum state "must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden*, 134 S. Ct. at 1122 (emphasis in original, quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). But this statement cannot refer to the agency theory because the quoted case—*Burger King*—predates *Daimler*. And *Walden* then cites numerous cases that show the Supreme Court's focus is unrelated third parties—not agents. *See id.* at 1122 (citing cases that do not involve agency relationships). Furthermore, *Walden* also states that "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Id.* at 1123 (emphasis added).

[6] Because Blackstone need only make a prima facie case that one intentional tort occurred in the state of Washington, the Court analyzes whether the factual allegations involving the alleged defamatory and/or tortiously interfering conduct support personal jurisdiction.

[7] The Court notes that the Corporate Defendants seem to agree that, if Carpenter acted as their agent, then his conduct occurred in Washington. *See* E2 and Technomate Repl. Br. at 9 (docket no. 68 at 11) ("Without being able to attribute Carpenter's forum-related activities to Technomate and E2, Blackstone cannot satisfy purposeful availment . . . as to either Defendant.").

Washington with Costco on the Corporate Defendants' behalf, with the Corporate Defendants' knowledge. *See* Exs. A11, A16 to Huck Decl. (docket no. 52-1); *see also id.* at Ex. A6 (docket no. 52-1 at 75) (asking Carpenter to help "bypass Blackstone and sell . . . tower fan[s] to Costco through . . . [Technomate's] agent which is you"); FAC at ¶¶ 50–51.

If Blackstone proves these allegations, then these facts support a finding that an agency agreement existed (actual agency) or that Defendants' collective conduct or statements caused Costco to reasonably believe that an agency relationship existed (apparent agency); *In re Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*, No. 09-CV-2076, 2010 WL 2640249, at *10 (W.D. Wash. June 25, 2010); *see Herring Networks, Inc.*, 2016 WL 4055636, at *7–8. The Court holds that it has personal jurisdiction over the Corporate Defendants, and E2's and Technomate's motions to dismiss for lack of personal jurisdiction therefore are DENIED.

### 3.     E2's Arbitration Request

In the alternative, E2 asks the Court to compel arbitration. It cannot do so. The arbitrator found that the claims at issue in this case are not arbitrable. *See* docket no. 90 at 36. This Court finds no reason to set aside the arbitrator's determination. E2's motion to compel arbitration is therefore DENIED.

## B.     <u>Motion to Dismiss</u>

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl.*

1    *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than

2    mere speculation of a right to relief. *Id.* When a complaint fails to adequately state a

3    claim, such deficiency should be "exposed at the point of minimum expenditure of time

4    and money by the parties and the court." *Id.* at 558. A complaint may be lacking for one

5    of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a

6    cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th

7    Cir. 1984). In ruling on a motion to dismiss, the Court must assume the truth of the

8    plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v.*

9    *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is

10   whether the facts in the complaint sufficiently state a "plausible" ground for relief.

11   *Twombly*, 550 U.S. at 570. If the Court considers matters outside the complaint, it must

12   convert the motion into one for summary judgment. Fed. R. Civ. P. 12(d). If the Court

13   dismisses the complaint or portions thereof, it must consider whether to grant leave to

14   amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).[8]

15        **1.    Defamation**

16        To establish trade libel or defamation, a plaintiff must show "falsity, an

17   unprivileged communication, fault, and damages." *See*, *e.g.*, *Mohr v. Grant*, 153 Wn.2d

---

[8] Throughout the motion papers, Defendants make an argument that Blackstone has engaged in improper group-pleading. The Court finds this argument unpersuasive. Plaintiff pleads all causes of action against all Defendants unless the FAC expresses otherwise. FAC at ¶ 1; *see ITT Enidine Inc. v. Gen. Aerospace, Inc.*, No. C18-1108, 2019 WL 4007331, at *2 (W.D. Wash. Apr. 8, 2019) (concluding that plaintiff did not engage in group pleading where the operative complaint defined a term to include the relevant defendants).

812, 822, 108 P.3d 768 (2005). Defendants contend that Blackstone has not pled falsity with enough specificity, or in the alternate, that the statements Carpenter made were true.[9] Defendants are incorrect as to the sufficiency of Blackstone's pleading, and Defendants misunderstand the standard on a motion to dismiss.

Regarding the Complaint's sufficiency, "a plaintiff need only plead enough fact[s] to raise a reasonable expectation that discovery will reveal that the defendant is liable" on a motion to dismiss. *ITT*, 2019 WL 4007331, at *2 (internal quotation marks omitted). Blackstone has done so. Blackstone specifically alleges that Carpenter's "representations" to Costco when acting as the Corporate Defendant's behalf "regarding monies allegedly owed by Blackstone to Mikia were false." FAC at ¶¶ 47, 50, 51. That level of specificity is sufficient to allege falsity. *See ITT*, 2019 WL 4007331, at *2 (internal quotation marks omitted).

Next, Defendants argue Carpenter's statements were true, and that truth is the ultimate defense to defamation. Defendants are correct—at the summary judgment stage. In fact, Defendants' authority in support of their argument all comes from that procedural posture.[10] On a motion to dismiss, however, the Court must assume the truth of the

---

[9] Defendants ask this Court to take judicial notice of both Blackstone's complaint and the decision in Blackstone's prior case against E2 in the District of Maryland. *See* docket no. 28. The Court takes judicial notice of these documents' existence and considers them in its ruling, *see Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005), but does not accept their assertions as true.

[10] *See Emmanuel v. King Cty.*, No. C18-0377, 2020 WL 4922206 (W.D. Wash. Aug. 21, 2020) (on summary judgment); *Mohr v. Grant*, 153 Wn.2d 812, 108 P.3d 768 (2005) (same); *Herron v. KING Broad. Co.*, 112 Wn.2d 762, 776 P.2d 98 (1989) (same).

ORDER - 14

plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. *Usher*, 828 F.2d at 561. Applying this standard yields only one result—Blackstone has met its burden. Defendants' motion to dismiss Plaintiff's first cause of action therefore is DENIED.

### 2.      The WCPA

To establish a violation of the WCPA, a private plaintiff must prove: (i) the defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice occurred within a trade or business; (iii) such act or practice affected the public interest; (iv) the plaintiff suffered an injury to his or her business or property; and (v) a causal relationship exists between the defendant's act or practice and the plaintiff's injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785–93, 719 P.2d 531 (1986). Whether conduct constitutes an unfair or deceptive trade practice within the meaning of the CPA constitutes a question of law. *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 114, 22 P.3d 818 (2001). To qualify, the alleged act must have had the "capacity to deceive a substantial portion of the public." *Hangman Ridge*, 105 Wn.2d at 785. Defendants argue that the alleged act or practice in this case did not affect the public interest. Defendants are correct.

The predicate to Blackstone's current WCPA claim concerns no more than alleged business-to-business defamation and tortious interference with a contract, which does not

affect the public interest.[11] Plaintiff alleges no facts that others have been or will be injured in exactly the same fashion. *See Sloan v. Thompson*, 128 Wn. App. 776, 792, 115 P.3d 1009 (2005) ("[I]t is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes the factual pattern from a private dispute to one that affects the public interest." (quoting *Hangman Ridge*, 105 Wn.2d at 790–91)). Defendants' motion to dismiss therefore is GRANTED without prejudice and with leave to amend.

### 3.    Unfair Competition

Blackstone argues that its unfair competition claim survives for the same reasons that its Lanham Act claim survives. As discussed below, Blackstone's Lanham Act claim fails. Thus, Blackstone's unfair competition claim fails for the same reasons that its Lanham Act claim fails. Defendants' motion as to the unfair competition claim is GRANTED without prejudice and with leave to amend.

### 4.    Tortious Interference

To establish tortious interference with a contractual relationship or business expectancy, a plaintiff must prove (i) the existence of a valid contractual relationship or business expectancy; (ii) the defendant's knowledge of that relationship, (iii) an intentional interference inducing or causing a breach or termination of the relationship or

---

[11] Blackstone argues that its Lanham Act claim also provides a predicate for this claim in that it establishes a public harm. Pl. Resp. Br. at 16 (docket no. 53 at 17). If that claim survived, then Blackstone might be able to allege a public harm. That claims fails, however. As such, this Court does reach Blackstone's arguments regarding its Lanham Act claim.

1  expectancy, (iv) the defendant's interference had an improper purpose or used an

2  improper means, and (v) resultant damage. *Leingang v. Pierce Cnty. Med. Bureau, Inc.*,

3  131 Wn.2d 133, 157, 930 P.2d 288 (1997). "Exercising in good faith one's legal interests

4  is not improper interference." *Id.* The Defendants argue only that Blackstone has not

5  satisfied the fourth part of the test, specifically whether Defendants used "improper

6  means" when interfering with Blackstone's contract with Costco. *See* Carpenter Repl. Br.

7  at 12 (docket no. 72 at 13). The Court concludes that Blackstone has alleged facts that

8  satisfy its burden.

9       Defendants contend that this cause of action is predicated on Blackstone's trade

10  secrets claim and therefore rises or falls based on the outcome of that cause of action.

11  Said differently, Defendants say that Blackstone's only basis for alleging "improper

12  means" is the alleged misappropriation of trade secrets. As such, Defendants also argue

13  that Blackstone's tortious interference claim is preempted by the WUTSA.[12] But

14  Defendants arguments are incorrect for the same reason—this cause of action survives

15  because of its relationship to the defamation cause of action, not because of its

16  relationship to Blackstone's trade secrets allegation. Here, Blackstone has plausibly

17  alleged that Carpenter, as the Corporate Defendants' agent, defamed Blackstone to

18  Costco. FAC at ¶¶ at 47, 50, 52. That conduct satisfies the fourth step in Washington's

19  test for tortious interference. *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1057–58 (9th

20

21  _____

22  [12] The Court does not reach the merits of Defendants' preemption argument because Blackstone's claim survives on independent grounds.

23

ORDER - 17

Cir. 1990) (addressing defamation as a predicate claim that satisfies tortious interference's "improper means" element). Defendants' motion to dismiss the tortious interference claim therefore is DENIED.

### 5.    The Lanham Act

"The Lanham Act provides for the registration of trademarks, which it defines in § 45 to include 'any word, name, symbol, or device, or any combination thereof [used or intended to be used] to identify and distinguish [a producer's] goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . .'" *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 209 (2000) (quoting 15 U.S.C. § 1127). "In addition to protecting registered marks, the Lanham Act, in § 43(a), gives a producer a cause of action for the use by any person of 'any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods . . . .'" *Id.* (quoting 15 U.S.C. § 1125(a)). In some cases, the packaging, "or 'dressing,' of a product" might also be actionable under § 43(a). *Id.* By comparison, the design of a product, itself, is not inherently distinctive and will not form the basis of an infringement claim, without more. *Id.* at 212. Thus, "in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Id.* at 216.

Because Blackstone has no registered trade dress, it must meet the test that the Ninth Circuit has laid out for unregistered trade dress claims. "To prove infringement of

an unregistered trade dress, a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018). Blackstone's Lanham Act claim fails on the second prong of this test.

Blackstone does not plead that its alleged trade dress has any secondary meaning or acquired distinctiveness. Instead, Blackstone simply asserts that its product is "distinctive," and says no more on the matter. FAC at ¶¶ 61, 102–104. That conclusory allegation, by itself, is not enough to survive a motion to dismiss. Instead, "to establish secondary meaning, [Blackstone] must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 265 F. Supp. 3d 1013, 1033 (N.D. Cal. 2017), *aff'd*, 786 F. App'x 662 (9th Cir. 2019) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)). Blackstone has not alleged that the public places "primary significance" on the source of the fans and not the fans themselves. Blackstone's Lanham Act claim therefore fails. Defendants' motion as to the Lanham Act claim therefore is GRANTED without prejudice and with leave to amend.

### 6.  The WUTSA and DTSA[13]

---

[13] The parties (and the Court) agree that the WUTSA and DTSA claims require the same showing so the Court will address them together.

1     A party asserting a trade secret claim bears the burden of "proving that legally

2 protectable secrets exist." *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 49, 738 P.2d 665

3 (1987). The Washington Uniform Trade Secrets Act defines a trade secret as information

4 that has independent economic value, is not generally known, and is the subject of

5 reasonable efforts to maintain its secrecy. RCW 19.108.010(4). For trade secrets to exist,

6 they must not be "readily ascertainable by proper means" from some other source,

7 including the product itself. RCW 19.108.010(4)(a). A "vague description" of the product

8 at issue without identification of what components are protected by trade secrets is

9 insufficient to survive a motion to dismiss. *Baden Sports, Inc. v. Wilson Sporting Goods*

10 *Co.*, No. C11-0603, 2011 WL 3158607, at *2 (W.D. Wash. July 26, 2011) (pleadings are

11 not adequate to survive a Rule 12(b)(6) motion when a party does not specify in its

12 complaint which components, or combination of components, of a device are protected

13 trade secrets). Defendants argue that Blackstone does not allege its trade secrets with

14 sufficient particularity. This Court agrees.

15     In support of its trade secrets claims, Blackstone alleges only that its "unique

16 methods and processes, proprietary modeling and formulas, and valuable and exclusive

17 know-how were trade secrets." FAC at ¶ 107. Blackstone also refers to its "marketing of

18 the Blackstone Tower Fan and Blackstone Personal Fan," *Id.* at ¶ 32, and "confidential

19 information regarding Blackstone's business relationship with Costco, DCI/Home Star,

20 and Mikia, including without limitation the 2019 Fan Program Agreement and

21 Blackstone's purchase orders for the Blackstone Tower Fans." *Id.* at ¶ 56. Blackstone's

22

23

position essentially is that a list of nouns, without further description, and a set of contracts, without more, amount to protectable trade secrets.

The indeterminacy of Blackstone's list sinks its claim. It does not "identify the trade secret "with sufficient particularity . . . to permit the defendant to ascertain at least the boundaries within which the secret lies." *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1178 (W.D. Wash. 2019). Instead, Blackstone paints with too broad a brush. Blackstone asks this Court to believe that, somewhere inside of its "unique methods and process," there lies a trade secret. The Court will not do so because Blackstone's allegations are a "vague description" of the product at issue, and Blackstone does not identify what components are protected by trade secrets. *Baden Sports,* 2011 WL 3158607, at *2.[14] Defendants' motion to dismiss the WUTSA and DTSA claims are GRANTED without prejudice and with leave to amend.

**7.    Copyright Infringement**

"To establish a prima facie case of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act[.]" *UMG*

---

[14] Assuming for the sake of argument that the items that Blackstone lists are determinate, Blackstone has not explained how it keeps these items secret. Blackstone has not alleged that they make Costco or Mikia sign non-disclosure agreements or take any other protective measures when they view the 2019 Fan Program Agreement or take purchase orders. Blackstone does not explain how it protects its "proprietary pricing formulas," "unique methods and processes," or its "marketing strategy." Blackstone also has not sufficiently alleged how these items' secrecy provide Blackstone with an economic advantage. In sum, Blackstone's trade secrets claims are wholly deficient.

*Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011); 17 U.S.C. § 501. The Copyright Act provides for various theories of liability, including direct infringement, contributory infringement, and vicarious infringement. 3 *Nimmer on Copyright* § 12.04 (2020).

The parties do not contest that Blackstone owned a valid copyright. Instead, Defendant Carpenter offers reasons as to why he is not liable under this cause of action for any theory of infringement. Notably, and in contrast to Carpenter, the Corporate Defendants make no arguments on their own behalf. *See* Carpenter Mot. to Dismiss (docket no. 22 at 17–18). As such, the motion is ambiguous as to whether the Corporate Defendants move to dismiss Blackstone's copyright claim. The Court assumes that the Corporate Defendants join Carpenter's motion. Because only Carpenter provides substantive argument on this cause of action, the Court addresses only the merits of his arguments.

### a.      Direct Infringement

Under the theory of direct infringement, Carpenter argues that he did not engage in the "volitional conduct" that the Ninth Circuit requires. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017). In *Giganews*, the Ninth Circuit clarified several bedrock aspects of copyright infringement liability. *See generally id.* Most relevant to Blackstone's direct infringement claims against Carpenter, the Ninth Circuit confirmed that direct copyright infringement has a causation component, often referred to as "volitional conduct," that a plaintiff must prove. *Id.* at 666. "'Volition' in this context

1    does not really mean an 'act of willing or choosing' or an 'act of deciding,' . . . ." *Id.*

2    (quoting *Volition*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986)).

3    "Rather, . . . it 'simply stands for the unremarkable proposition that proximate causation

4    historically underlines copyright infringement liability no less than other torts.'" *Id.*

5    (quoting 4 *Nimmer on Copyright* § 13.08(c)(1) (2016) (Matthew Bender, Rev. Ed.)).

6          Here, Blackstone's allegations against Carpenter clear that bar. Blackstone alleges

7    that "Defendants manufactured, imported, distributed, and/or sold" the Sierra Tower Fan

8    to Costco. FAC at ¶ 59. Blackstone also alleges that the Sierra Tower Fan that

9    Defendants sold to Costco included a "user manual," which infringed on Blackstone's

10   registered copyrights through the inclusion of protected "text and images." *Id.* at ¶¶ 59,

11   62. To succeed, Blackstone had "to demonstrate . . . some evidence showing [Carpenter]

12   exercised control (other than by general operation . . .); selected any material for upload,

13   download, transmission, or storage; or instigated any copying, storage, or distribution of

14   [the offending material]." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir.

15   2019). Blackstone has done so. It has alleged that Carpenter at least instigated the

16   distribution and sale of the offending material. FAC at ¶¶ 53, 54. The "nexus" that

17   Blackstone alleges is "sufficiently close and causal to the illegal copying that one could

18   conclude that" Carpenter "himself trespassed on the exclusive domain of the copyright

19   owner." *Id.* Said in the hornbook language of proximate cause, it was reasonably

20   foreseeable that Carpenter's actions would result in copyright infringement. For these

21

22

23

reasons, the Court DENIES Defendants' motion as to Blackstone's theory of direct copyright infringement.

### b.   Contributory Infringement

Contributory infringement originates in tort law and stems from the notion that one who directly contributes to another's infringement should be held accountable. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984). In other words, the common law doctrine that one who knowingly participates in or furthers a tortious act is jointly and severally liable with the prime tortfeasor is applicable under copyright law.[15]

Here, Blackstone alleges that Carpenter knew of the Blackstone's Copyrights "through E2." FAC ¶ 63. Blackstone also alleges that a cease-and-desist letter that it sent to E2 provided Carpenter with knowledge of the alleged copyright infringement. *Id.* at ¶ 64. That letter told E2 to, in relevant part, "[c]ease and desist from all unauthorized use of Blackstone Intellectual Property, including . . . ceasing the manufacture, distribution, sale and/or sale for importation of the Sierra Tower Fan . . . or any products confusingly similar to the Blackstone Products." These allegations, coupled with Carpenter's active participation in the distribution of the fans, adequately aver that Carpenter knowingly participated in the infringing activity. *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d

---

[15] The classic statement of the doctrine is in *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*: "[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." 443 F.2d 1159, 1162 (2d Cir. 1971); *see also Universal City Studios, Inc. v. Sony Corp. of Am.*, 659 F.2d 963, 975 (9th Cir. 1981), *rev'd on other grounds*, 464 U.S. 417 (1984) (adopting *Gershwin* in this circuit).

ORDER - 24

259, 261 (9th Cir. 1996) (reversing dismissal where a swap-meet organizer facilitated the sale of bootleg records by third-party vendors and benefitted from the sale of the bootlegged works). For these reasons, the Court DENIES Defendants' motion as to Blackstone's theory of contributory copyright infringement.

### c.    Vicarious Copyright Infringement

The concept of vicarious copyright liability was developed in the Second Circuit as an outgrowth of the agency principles of respondeat superior. *See Fonovisa*, 76 F.3d at 261–62. "To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant has (i) the right and ability to supervise the infringing conduct and (ii) a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). Carpenter does not employ the Corporate Defendants, so this theory may be inapplicable to his behavior. Said differently, Blackstone does not allege that Carpenter had the "right and ability to *supervise* the infringing conduct." *Id.* (emphasis added).  For these reasons, the Court GRANTS Carpenter's motion as to Blackstone's theory of vicarious copyright infringement without prejudice and with leave to amend. The Court DENIES E2's and Technomate's motion for the same.

### 8.    Unjust Enrichment

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wash.2d 477, 484, 191 P.3d 1258 (2008).

Three elements must be established in order to sustain a claim based on unjust enrichment: a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Id.* (internal citations omitted). In this case, Blackstone's allegation that "Defendants received the benefit of the sales of Blackstone's products . . . ," FAC at ¶ 133, is merely a conclusion and is not enough to satisfy the first prong of the test. As such, Blackstone fails to adequately plead this cause of action. Defendants motion as to unjust enrichment is therefore GRANTED without prejudice and with leave to amend.

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1)     E2's and Technomate's motions to dismiss the FAC under Rule 12(b)(2) for lack of personal jurisdiction, docket nos. 21 and 24, are DENIED.

(2)     E2's alternative request to compel arbitration is DENIED.

(3)     Defendants' motions to dismiss the FAC under Rule 12(b)(6) for failure to state a claim, docket nos. 22 and 29, are GRANTED in part and DENIED in part, as follows:

a.      The motions are GRANTED as they relate to Count II (violation of WCPA), Count III (unfair competition), Count V (violation of the Lanham Act), Count VI (violation of the WUTSA), Count VII (violation of the DTSA), Count VIII (copyright infringement) on the theory of vicarious infringement as to

1    Defendant Carpenter, and Count IX (unjust enrichment), and these claims are

2    DISMISSED without prejudice and with leave to amend.

3           b.     The motions are DENIED as they relate to Count I (defamation),

4    Count IV (tortious interference). As to Count VIII (copyright infringement),

5    Carpenter's motion as to the theories of direct and contributory infringement are

6    DENIED, and E2's and Technomate's motions are DENIED in their entirety.

7    (4)    Defendant E2's and Carpenter's motion to seal, docket no. 62, is

8    GRANTED, and Blackstone's filings in docket nos. 49 and 52 shall remain under seal.

9    (5)    Any amended pleading shall be filed within thirty (30) days of this Order.

10   Any responsive pleading or motion shall be filed within thirty (30) days thereafter.

11   (6)    The Clerk is directed to send a copy of this Order to all counsel of record.

12   IT IS SO ORDERED.

13   Dated this 31st day of October, 2022.

15   Thomas S. Zilly
     United States District Judge
16